# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

WILLIAM CRUMP,

        Petitioner,               Case Number: 2:16-CV-13381
                                                   HON. DENISE PAGE HOOD

v.

SHERRY BURT,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Michigan state prisoner William Crump filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges his convictions for three counts of third-degree criminal sexual conduct, Mich. Comp. Laws § 750.520d(1)(a) (victim at least 13 years old and under 16 years old); three counts of fourth-degree criminal sexual conduct, Mich. Comp. Laws § 750.520e(1)(a) (victim at least 13 years of age but less than 16 years of age and actor more than five years older than the victim), and one count of accosting a child for an immoral purpose, Mich. Comp. Laws § 750.145a. He raises two claims for relief. Respondent argues that several of the claims are meritless. For the reasons stated, the Court denies the petition and denies a certificate of appealability.

## I. Background

Petitioner's convictions arise from his sexual conduct with three girls, Neonie O., Shyya H., and Shadivia P. Shadivia testified that, in 2011, she ran away from a home for troubled youth, Vista Maria. Shadivia was fifteen-years old at the time. Two other girls, Shyya and Neonie, ran away with her. Shadivia, Neonie, and another girl known as Desi went to Petitioner's home. Shadivia stayed at the home for about one to two months. She did not pay any rent. Occasionally, Petitioner asked Shadivia to have sex with him to pay for her room. She did not have sex with him, but he touched her breasts and buttocks numerous times without her consent. She also saw Petitioner touch Neonie in the same ways he had touched her. Shadivia testified that when Child Protective Services first questioned her she denied that Petitioner had touched her inappropriately because she was embarrassed and did not want the situation to escalate.

Neonie testified that, in May 2011, she was fifteen-years-old. She left Vista Maria in early 2011 and went to Petitioner's home, where she stayed for approximately three months. Several times, while staying at Petitioner's home, she awoke to find him touching her leg and thigh, and trying to touch her private area. Petitioner suggested to her several times that she could have sex with him in lieu of paying rent. One day, she was standing in the bathroom when he entered, pulled

her panties aside, and licked her vagina.

Shyya testified that she too stayed at Petitioner's home after running away from Vista Maria. She was thirteen-years-old at the time. On one occasion, she asked Petitioner to rub her back while they were watching TV. Another girl, Arizona Adams, was present in the room. After rubbing her back for a while, Petitioner placed his fingers in her vagina. Arizona left the room. Petitioner then penetrated her vagina with his penis.

Arizona Adams testified that she stayed at Petitioner's home for about a week at the same time that Shyya stayed there in 2011. Adams did not feel threatened while at the home and testified that Petitioner never touched her inappropriately. One day she saw Petitioner and Shyya having intercourse.

Petitioner did not testify in his own defense and presented no witnesses.

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of three counts of third-degree criminal sexual conduct, three counts of fourth-degree criminal sexual conduct, and one count of accosting a child for an immoral purpose. Petitioner was sentenced as a fourth habitual offender to concurrent sentences of 25 to 42 years for third-degree CSC convictions, 1 to 2 years for the fourth-degree CSC convictions, and 2 to 15 years for the accosting a child for immoral purposes conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising these claims: (i) counsel was ineffective during plea negotiations; (ii) trial court improperly left Petitioner handcuffed during trial; and (iii) counsel was ineffective for failing to object to trial court's decision to leave Petitioner handcuffed during trial. The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Crump*, No. 316583, 2014 WL 7157385 (Mich. Ct. App. Dec. 16, 2014). The Michigan Supreme Court denied leave to appeal. *People v. Crump*, 498 Mich. 872 (Mich. Sept. 9, 2015).

Petitioner then filed a habeas corpus petition. The petition raises these claims:

> I. Mr. Crump is entitled to a new trial or the reinstatement of the final plea offer because his defense attorney provided constitutionally inadequate assistance under the Sixth and Fourteenth Amendment.
>
> II. A new trial is warranted because the trial judge had Mr. Crump shackled prior to ever meeting him or his entering into that court room, where no record evidence exist[ed] of disruptive behavior, which is cruel and unusual punishment under the Sixth, Fourteenth and Eighth Amendment.

**II. Standard of Review**

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his

4

claims –

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 408. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA

thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.*

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard

against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103, 131 S. Ct. at 786–87.

Additionally, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III. Discussion

### A. Claim One: Ineffective Assistance of Counsel

In his first claim for habeas relief, Petitioner argues that defense counsel failed to convey to him the prosecution's final plea offer, extended on August 16, 2012, which would have allowed him to plead guilty to attempted accosting and soliciting a minor with a prison sentence of one to two years.

7

1. State court evidentiary hearing

After Petitioner's trial, Petitioner moved for reversal of his convictions and entry of a plea-based conviction, or for a hearing pursuant to *People v. Ginther*, 390 Mich. 436 (1973), and a new trial. Petitioner argued he was not aware of the final plea offer until he received a copy of defense counsel's response to a grievance filed by Petitioner. The trial court conducted a two-day evidentiary hearing and heard testimony from eight witnesses: Robert Slameka (trial counsel), Larry Polk (Petitioner's first attorney), three Wayne County assistant prosecutors (Keith Clark, Danielle Russo and Kellie Gleason), two Wayne County Sheriff's Deputies (Ebony Bragg and Christopher Mittlestat); and Petitioner.

Petitioner testified that he filed a grievance against trial counsel Robert Slameka on August 2, 2012. On August 28, 2012, he received Slameka's letter responding to the grievance. In the letter, Slameka stated that Petitioner had rejected a plea offer pursuant to which Petitioner would plead guilty to attempted accosting and soliciting a minor with a sentence agreement of one to two years in prison. Petitioner testified that this was the first time he learned such an offer had been made. He also testified that he appeared before Judge Cynthia Hathaway on August 16, 2012, but no offers were made to him on the record and none were conveyed to him by defense counsel. He testified that he would have accepted the

one- to two-year plea offer.

     Slameka testified that he took over Petitioner's CSC case in March 2012, along with an unrelated felonious assault charge, from attorney Larry Polk. Petitioner was acquitted of the felonious assault charge in May 2012, after a trial before Judge Hathaway. Slameka testified that, on May 9, 2012, Petitioner rejected a plea offer from prosecuting attorney Keith Clark of 1-1/2 to 4 years for one count and 1 to 2 years on a second count (Slameka did not recall the precise counts involved in this offer). Petitioner rejected the offer because he only wanted to serve time in the county jail, not in a state prison. About one month before trial, the prosecutor was having difficulty locating the complainants, all of whom were runaways. So, the prosecutor offered a plea of guilty to attempted accosting and soliciting a minor with a sentence agreement of 1 to 2 years in prison. Slameka testified that he relayed this offer to Petitioner at a special pretrial conference on August 16, 2012. Petitioner refused the offer because he wanted to serve only one year of county time. Slameka conveyed Petitioner's position to the prosecutor, who refused to offer one-year county time. On the date set for trial, September 19, 2012, Petitioner's case was transferred to Judge James Callahan. All prosecution witnesses appeared for trial. At that point, Petitioner informed Slameka that he wanted to take the prosecutor's final plea offer. Slameka asked Judge Hathaway to

9

accept the plea offer, but she declined to do so as the case was no longer assigned to her and the prosecutor said that the offer was no longer available.

The testimony of Keith Clark, the prosecutor assigned to Petitioner's case, was largely consistent with Slameka's testimony. He recalled an August 16, 2012 court appearance during which he offered Petitioner a plea of guilty for attempted accosting and soliciting with a sentence agreement of 1-1/2 to 4 years. Clark discussed the offer with Slameka in Petitioner's presence. Clark rejected Petitioner's counter-offer of "county time," but, because he had been unable to locate the victims, made a final offer of attempted accosting and soliciting with a sentence agreement of 1 to 2 years. After speaking with his client, Slameka informed Clark that Petitioner rejected the offer because he only wanted to serve county jail time.

Prosecuting attorney Danielle Russo testified that, although she was not assigned to Petitioner's case, she was assigned to Judge Hathaway's courtroom and, therefore, familiar with the case. Russo was present during one pretrial hearing when Judge Hathaway asked whether the case would be resolved prior to trial. Clark recited a plea offer that had a sentence agreement of 1 to 2 years. Slameka informed the court that Petitioner rejected the offer because he would only agree to serve one year in the county jail.

10

Prosecuting attorney Kellie Gleason testified that she was present at a pretrial hearing during which Clark and Slameka discussed, in Petitioner's presence, a plea offer that included a sentence agreement of 1 to 2 years. She recalled Slameka stating that Petitioner rejected the offer because he was only willing to do county time.

Following the hearing, the trial court held that the offer of one- to two-years for a plea of guilty to one count of attempted soliciting and accosting a minor was conveyed to Petitioner well before the date the jury trial commenced. *See* 12/9/13 Order at 5-6, ECF No. 8-13, Pg. ID 1431-32. Petitioner rejected the plea offer because he was intent on serving time only in the county jail. *Id.* at 6, Pg. ID 1432. The trial court further held:

> The defendant's intransigence or stubbornness in proceeding to trial may be accounted for by his previous representation by Mr. Slameka which turned out to be successful and possibly the misguided belief that the prosecution's witnesses were not going to be appearing during the course of the trial. This gamble taken by the defendant ultimately resulted in his conviction and was not due to his having received ineffective assistance of counsel.

*Id.*

### 2. Michigan Court of Appeals' decision

The Michigan Court of Appeals held that the *Ginther* hearing testimony supported the trial court's decision. The state court reasoned:

11

> Defendant's primary complaint on appeal is that the trial court erroneously accepted the testimony of Slameka, Clark, Polk, and other witnesses presented by the prosecution as opposed to defendant's testimony and evidence. According to defendant, the testimony presented by the prosecution at the *Ginther* hearing was inconsistent. However, all of the witnesses at the *Ginther* hearing, other than defendant, testified that Slameka informed defendant of the final plea offer and defendant rejected the offer because he wanted a sentence of one year of "county time." The testimony was only inconsistent with regard to when defendant learned of the final plea offer. This Court defers to the trial court on matters of witness credibility because the trial court has the ability to observe the witnesses. ... Moreover, while defendant presented evidence that he claimed contradicted the prosecution's evidence, we are not convinced. Defendant presented evidence that on August 30, 2012, he submitted a telephone request to Tameka Lacy, asking that she contact Slameka. "Tell him that if I was offered 1 to 2 yrs [sic] I want to accept that plea before trial. Tell her to ask him why wouldn't [sic] he tell me this info." Defendant asserts that his telephone call request would "make no sense" if defense counsel had informed him of the final plea offer. However, defendant may have forgotten that Slameka informed him of the plea offer or defendant could have changed his mind seeing as it had been over a week since August 16, 2012, the date when the prosecutor stated he made the final plea offer. Therefore, defendant's telephone call request is not entirely inconsistent with Slameka's testimony. Defendant also points out that he consistently attempted to accept the final plea offer after receiving defense counsel's response letter to the grievance defendant filed. However, defendant's attempts to accept the offer occurred after the prosecution was able to obtain the testimony of key witnesses, and, thus, the offer was no longer available. For these reasons, we are not left with a definite and firm conviction that the trial court committed clear error in its finding of facts.

*Crump,* 2014 WL 7157385 at *2.

### 3. Review under AEDPA

Plea negotiations are a critical stage of criminal proceedings during which a defendant is entitled to the effective assistance of counsel. *Missouri v. Frye*, 566 U.S. 134, 144 (2012). *Strickland v. Washington's* two-prong test for evaluating whether a defendant has received ineffective assistance of counsel applies to plea-negotiation claims. *Johnson v. Genovese,* 924 F.3d 929, 934 (6th Cir. 2019), (citing *Strickland v. Washington,* 466 U.S. 668 (1984)). A petitioner claiming ineffective assistance during plea negotiations must show: "(1) counsel's performance was deficient, *i.e.*, "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) the deficient performance prejudiced the defense. *Id.* (quoting *Strickland*, 466 U.S. at 687). The failure to communicate a plea offer constitutes deficient performance. *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003). The second prong requires defendants to "demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of trial counsel." *Frye,* 566 U.S. at 148.

The Michigan Court of Appeals affirmed the trial court's factual finding that the one- to two-year plea offer was communicated to Petitioner. This factual finding is "presumed correct and rebuttable only by clear and convincing

evidence." *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003) (quotation omitted). Petitioner fails to present clear and convincing evidence to rebut the state courts' factual finding. He offers no evidence to rebut the state courts' findings. The *Ginther* hearing testimony overwhelmingly supports the factual finding. Petitioner's disagreement with the state court's assessment of the testimony does not amount to clear and convincing evidence sufficient to rebut the presumption of correctness. "[I]t is not enough that reasonable minds reviewing the record might disagree with the state court's factual determination; rather, the record must '*compel* the conclusion that the [state] court had no permissible alternative'" but to arrive at the contrary conclusion." *Carter v. Bogan*, 900 F.3d 754, 768 (6th Cir. 2018) (quoting *Rice v. Collins*, 546 U.S. 333, 341-42 (2006)) (emphasis in *Carter*).

Petitioner fails to rebut the factual finding that counsel communicated the one- to two-year plea offer to him. Thus this ineffective assistance of counsel claim is meritless.

### B. Claim Two: Shackling of Petitioner

Petitioner's second claim alleges that his constitutional rights were violated when he was handcuffed during his trial. The trial court held shackling was necessary based upon Petitioner's disruptive conduct with the sheriff's deputies.

Due process has "long forbidden routine use of visible shackles during the guilt phase; it permits a State to shackle a criminal defendant only in the presence of a special need." *Deck v. Missouri*, 544 U.S. 622, 626 (2005). Physical restraints visible to the jury may be used only when "they are justified by a state interest specific to a particular trial." *Id.* at 629. Their use must be justified by a case-specific determination, such as particular security needs, stated on the record. *Id.* at 632-33. Handcuffing is permitted to prevent the escape of the accused, to protect people in the courtroom, and to maintain order during the trial. *See Kennedy v. Cardwell*, 487 F.2d 101, 110-111 (6th Cir. 1973).

The threshold question is whether the shackles were visible to the jury. *See Earhart v. Konteh*, 589 F.3d 337, 349 (6th Cir. 2009) (holding that a claim based on *Deck* "rises or falls on the question of whether the [restraint] was visible to the jury"). Where a restraint is not visible, there is no due process violation. *Leonard v. Warden, Ohio State Penitentiary,* 846 F.3d 832, 842 (6th Cir. 2017). The Michigan Court of Appeals held that Petitioner failed to establish that the jury saw his handcuffs. The factual finding by the state court is binding on this Court unless Petitioner can show that it is clearly erroneous. *Earhart*, 589 F.3d at 349 (citing 28 U.S.C. § 2254(e)(1)). Petitioner disagrees with the state court's finding but fails to rebut the determination with clear and convicting evidence. *See* 28 U.S.C. §

2254(e)(1). No clearly established Supreme Court precedent establishes that restraints that are not visible to the jury violate due process. *See Leonard*, 846 F.3d at 842-43 (6th Cir. 2017). Habeas relief is denied on this claim.

IV.     **Certificate of Appealability**

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).

The Court concludes that reasonable jurists would not debate the Court's disposition of the claims raised in this petition. Thus, the Court denies a COA.

V.      **Conclusion**

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus

and a certificate of appealability are **DENIED**.

s/Denise Page Hood<br>Chief Judge, United States District Court

Dated: September 25, 2019